UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**AMANDA MAYS**,                                            Case Number 1:14 CV 800

      Plaintiff,                                            Magistrate Judge James R. Knepp II

      v.                                            MEMORANDUM OPINION AND
                                          ORDER

**COMMISSIONER OF SOCIAL SECURITY**,

      Defendant.

## INTRODUCTION

Plaintiff Amanda Mays filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The parties have consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons given below, the Court remands the Commissioner's decision denying benefits.

## PROCEDURAL BACKGROUND

On November 4, 2010, Plaintiff applied for DIB and SSI alleging disability since January 3, 2010. (Tr. 241-256). Plaintiff's claims were denied initially (Tr. 183, 186) and on reconsideration (Tr. 191, 194). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 197-98). On October 23, 2012, Plaintiff (represented by counsel) and a vocational expert ("VE") testified at a hearing, after which Plaintiff was found not disabled. (Tr. 91-113, 123-144). On February 26, 2014, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-7); 20 C.F.R.

§§ 404.955, 404.981, 416.1455, 416.1481. On April 13, 2014, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

***Personal and Vocational Background***

Born November 29, 1982, Plaintiff was 27 years old at the time of her alleged disability onset date. (Tr. 241). She has a general equivalency diploma ("GED"), a State Tested Nurse Aide ("STNA") license, and at the time of the hearing, was in school learning to be a Dental Assistant. (Tr. 128-29).  She has past work experience as a deli clerk, waitress, home health attendant, cashier, and hostess. (Tr. 141).

***Medical Evidence***

Physical Impairments

Plaintiff had a history lower back pain with radicular symptoms causing pain and numbness to radiate into the left lower extremity. (Tr. 409).  Plaintiff went to the MetroHealth emergency room on April 20, 2011, four days after falling down steps and landing on her back. (Tr. 414). An MRI of the lumbar spine taken after the accident on April 29, 2011, revealed very mild disc disease in the inferior thoracic and inferior lumbosacral spine. (Tr. 409). Central/left paracentral broad-based disk herniation was noted resulting in mild focal mass effect upon the ventral thecal sac and mild mass effect upon the descending S1 nerve roots. (Tr. 410).  A follow-up MRI was performed on August 17, 2011, revealing no significant changes. (Tr. 519).

Plaintiff first saw Peter Greco, M.D., on November 14, 2011, to request a referral for bariatric surgery. (Tr. 448). Plaintiff reported being on Vicodin and that she had been prescribed 60 Vicodin pills in October, however, the Ohio automated prescription reporting system indicated she was last prescribed fifteen pills in August. (Tr. 448). Plaintiff was also taking

2

Voltaren. (Tr. 448). On examination, Plaintiff was morbidly obese with a body mass index of 47.5. (Tr. 448). Dr. Greco referred Plaintiff to weight management and bariatric surgery and prescribed a higher dose of Voltaren but did not continue her on Vicodin. (Tr. 449).

On March 14, 2012, Plaintiff returned to Dr. Greco who discussed her physical limitations with her. (Tr. 547). He diagnosed chronic sciatica and referred her to pain management. (Tr. 548). Dr. Greco also completed a residual functional capacity ("RFC") assessment for Social Security Disability. (Tr. 412). He opined that Plaintiff was limited to lifting/carrying no more than five pounds; standing/walking four to five hours total in a day with interruptions every two to three hours; sitting four to five hours a day with interruptions every hour; rarely climbing, crouching, or crawling; and occasionally balancing, stooping, or kneeling on the right knee. (Tr. 412-13). He indicated Plaintiff would need additional breaks throughout the workday and would require a sit/stand option. (Tr. 413).

Mental Impairments

On May 29, 2010, Plaintiff was admitted to Southwest General Health Center hospital after she attempted suicide following an argument with her husband. (Tr. 312). Plaintiff reported feeling anxious, depressed, tearful, hopeless, and tired with poor sleep. (Tr. 312). These symptoms were exacerbated by her financial problems and learning her husband was having an affair. (Tr. 312). Plaintiff had a history of marijuana use and past suicide attempts. (Tr. 312). She tested positive for marijuana, ecstasy, and benzodiazepines. (Tr. 312). Upon her discharge mental status examination, Plaintiff was well-groomed and behaved appropriately. (Tr. 313). Her mood was very depressed, tearful and her speech had loose associations but was at the normal rate and logical. (Tr. 313). Plaintiff was alert and oriented but displayed poor impulse control and poor insight and judgment. (Tr. 313). She was discharged on June 1, 2010, with a plan to start an

intensive outpatient program at Oakview. (Tr. 312-13). She had a Global Assessment of Functioning ("GAF") score of 55[1] at discharge. (Tr. 314).

On September 17, 2010, Plaintiff underwent an initial psychiatric evaluation at the Center for Families and Children. (Tr. 349). Initially, she reported a history of depression and bipolar disorder. (Tr. 349). On mental status examination, Plaintiff was clean and had a pleasant, bubbly demeanor. (Tr. 349). Her eye contact and speech were normal, she was alert and oriented, and her cognition was grossly intact. (Tr. 350). Plaintiff was diagnosed provisionally as suffering from Bipolar II or Major Depression and assigned a GAF score of 52.[2] She was prescribed Lamictal titration and Celexa. (Tr. 351). Plaintiff continued to be seen at the Center throughout 2010 and into 2011 during which time, she struggled, particularly with sleeplessness, but her mental status was otherwise stable with some improvement. (Tr. 352, 380-83).

On April 27, 2011, Nicole Pierson, LSW, completed a daily activities questionnaire for Plaintiff. (Tr. 391-92). Ms. Pierson indicated Plaintiff lived independently with her three children. (Tr. 391). Ms. Pierson said Plaintiff did not associate with anyone besides her children and her fiancé and would only communicate with other family via Facebook. (Tr. 391). She indicated Plaintiff could interact with co-workers and supervisors and had done so in the past, but that she did not want to have contact with them. (Tr. 391). She said Plaintiff cooked, was able to shop when her back was not bothering her, and bathed regularly although sometimes she was hypervigilant and would take up to seven baths in a day. (Tr. 392). Plaintiff would avoid

---

1. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers). *Id.*, at 34.
2. *See DSM-IV-TR*, *supra*, note 1.

public transportation because of other people but would occasionally drive a car. (Tr. 392). She did not have a bank account because she did not trust banks. (Tr. 392).

On June 6, 2011, Plaintiff reported having periods of time she could not remember, usually brought on by a fight with her husband or being very upset for some other reason. (Tr. 405). Plaintiff's Lamictal and Citaprolam prescription doses were increased. (Tr. 405). In July 2011, Plaintiff reported having auditory hallucinations of a voice screaming in her head. (Tr. 404). She reported starting school but felt nervous around the other students because she felt like they were talking about her. (Tr. 404). Her mental status exam was good with no sign of delusions. (Tr. 404). Her dose of Lamictal was increased. (Tr. 404).

On August 8, 2011, K. Lole, M.D., completed a mental status questionnaire for Plaintiff. (Tr. 399-401). Dr. Lole observed Plaintiff had good hygiene, fair grooming, and normal speech. (Tr. 399). Plaintiff appeared tired but had a full affect and appeared to have a euthymic mood. (Tr. 399). Dr. Lole said Plaintiff reported worrying but that it did not consistently interfere with her daily activities and there were no signs of thought disorders, hallucinations, delusions, or impaired memory. (Tr. 399). Dr. Lole opined Plaintiff would have some difficulty following directions but could complete a task after repeat directions. (Tr. 400). Dr. Lole said Plaintiff had no sign of impairment in her ability to maintain attention or sustain concentration, persistence, or pace and that she should be able to complete simple, routine, repetitive tasks with limited ability to handle situations with extreme pressure and stress. (Tr. 400).

From December 5, 2011 through December 7, 2011, Plaintiff was admitted to Lutheran Hospital with a depressed mood and suicidal thoughts after she forgot to take her medication and found a picture of her mother, who committed suicide. (Tr. 526). Her mental status examination at discharge showed she was alert and oriented with normal speech, had a euthymic mood, and

had no suicidal ideation. (Tr. 526). Plaintiff's cognition, memory, concentration, and insight and judgment were intact. (Tr. 527).

Kathleen Svala, M.D., completed a mental functional capacity report for Plaintiff on March 26, 2011. (Tr. 501). Dr. Svala opined that Plaintiff's ability to maintain attention and concentration for extended two hour segments was poor as was her ability to interact with supervisors and deal with work stresses. (Tr. 500). She also opined Plaintiff had a fair ability to behave in an emotionally stable manner, relate predictably in social situations, manage funds and schedules, leave home on her own, complete a normal workday and work week without interruption from psychological symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 500-501). Further, Plaintiff had a fair ability to remember and carry out complex or detailed job instructions, respond appropriately to changes in a routine work setting, maintain regular attendance and be punctual within customary tolerances, deal with the public, relate to coworkers, function independently without special supervision, and work in coordination with or in proximity to others without being unduly distracted or distracting. (Tr. 501). Dr. Svala opined that Plaintiff's ability to follow work rules, maintain appearance, and understand, remember and carry out simple job instructions was good. (Tr. 501).

On May 12, 2011, state reviewing psychologist, Tonnie Hoyle, Psy.D., reviewed the medical evidence of record and issued an opinion regarding Plaintiff's ability to perform basic mental work activities. (Tr. 162-67). Dr. Hoyle opined that Plaintiff was moderately limited in her ability to interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr.

177-78). Plaintiff was also moderately limited in her ability to respond appropriately to changes in the work setting, travel in unfamiliar places, or use public transportation. (Tr. 178).

***ALJ Decision***

On November 8, 2012, the ALJ found Plaintiff had the severe impairments of degenerative disc disease of the spine, bipolar disorder, and obesity. (Tr. 97). The ALJ found Plaintiff's impairments considered singly or in combination did not meet or equal a listing. (Tr. 98). Next, the ALJ found Plaintiff had the RFC to do work at the sedentary level. (Tr. 100). Additionally, Plaintiff could only lift and carry ten pounds occasionally and less than ten pounds frequently; could stand/walk for a total of two hours in an eight-hour workday and sit for six hours in an eight-hour workday; could not climb ladders, scaffolds, or ropes or crawl; could only occasionally use ramps or stairs, balance, stoop, kneel or crouch; was limited to jobs that involve only occasional, superficial contact with the public, coworkers, and supervisors; and could not perform work that requires strict, fast paced, daily production quotas. (Tr. 100-01).

Next, the ALJ found, based on the VE testimony, that Plaintiff could perform work as a surveillance monitor, order processor, and check weigher. (Tr. 108).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings

"as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1.     Was claimant engaged in a substantial gainful activity?

2.     Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.     Does the severe impairment meet one of the listed impairments?

4.     What is claimant's residual functional capacity and can claimant perform past relevant work?

5.     Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work

in the national economy.  *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred (1) by failing to give proper weight to the opinions of her treating physicians Drs. Greco and Svala; and (2) because his RFC assessment was not supported by substantial evidence. (Doc. 16, at 12, 15). Each of these arguments will be addressed in turn.

### *The Treating Physician Rule*

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id*. When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*.

Importantly, the ALJ must give "good reasons" for the weight given to a treating physician's opinion. *Id.* "Good reasons" are reasons "sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion

and the reasons for that weight." *Rogers*, 486 F.3d at 242 (*quoting* SSR 96-2p, 1996 WL 374188,

at \*4). "Good reasons" are required even when the conclusion of the ALJ may be justified based

on the record as a whole. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

> The ALJ assessed Drs. Greco and Svala's opinions as follows:
>
> Peter Grecco, M.D., also a treating physician, completed a functional capacity report. Dr. Greco stated that the [sic] can lift no more than 5 pounds, can stand or walk for a total of 4-5 hours in an 8 hour workday, but only for 2-3 hours without interruption. Additionally, he noted that she can sit for a total of 4-5 hours, but without interruption for only 1 hour. Dr. Grecco also stated that the claimant can never climb, crouch, or crawl, and can occasionally balance or stoop. (Ex. 10F) The undersigned gave consideration to the opinion of Dr. Grecco. His opinion is given some weight as a treating source.
>
> Also, the claimant's treating doctor, Kathleen Svala, M.D., completed a mental functional capacity report of the claimant in March 2012. In this report, she indicated that the claimant had poor ability to maintain attention and concentration for extended periods of 2 hour segments, to interact with supervisors, and deal with work stresses. She also opined the claimant had a fair ability to behave in an emotionally stable manner, relate predictably in social situations, manage funds and schedules, leave home on her own, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, understand, remember and carry out complex or detailed job instructions, respond appropriately to changes in routine work setting, maintain regular attendance and be punctual within customary tolerances, deal with the public, relate to coworkers, function independently without special supervision, work in coordination with or proximity to others without being unduly distracted or distracting. (Ex. 12F) The undersigned gave consideration to the opinion of Dr. Svala. As a treating source, this opinion was given some, but not controlling weight.

(Tr. 105-06).

Here, the ALJ summarizes the physicians' opinions and provides that he is giving them

"some weight" but he does not provide good reasons or in fact any reason for the weight he

assigns them. Although Defendant argues the record shows the ALJ considered the record as a

whole in making his determination, the ALJ did not provide good reasons for the weight given

10

which "denotes a lack of substantial evidence, even where the conclusions of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

However, the ALJ's error can be excused if it is harmless. A violation of the treating physician rule is harmless error if: (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527(d)(2) – the provision of the procedural safeguard of reasons – even though she has not complied with the terms of the regulation." *Wilson*, 378 F.3d at 547.

In this case, neither Dr. Greco nor Dr. Svala's opinion is "patently deficient" nor is this a case where discussion elsewhere in the opinion makes it clear the basis on which Drs. Greco and Svala's opinions were rejected. Defendant tacitly argues for harmless error based on the second excuse, because the ALJ has made finding consistent with the doctors' opinions.

Defendant argues the ALJ incorporated Dr. Svala's opinion that Plaintiff has poor ability to maintain concentration for two hour segments, interact with supervisors, and deal with work stressors by restricting Plaintiff to occasional, superficial contact with the public, co-workers, and supervisors, and precluding her from any work requiring strict, fast-paced, daily production quotas. (Doc. 18, at 8-9). Defendant further contends that while the ALJ may have failed to adopt the concentration restriction, this was because he found it reasonable to be more restrictive in other areas of functioning. (Doc. 18, at 8). Defendant points out that although Dr. Svala opined that Plaintiff had a fair ability to work in coordination with and in proximity to others, the ALJ's limitation was more restrictive in that it only allowed her occasional, superficial contact with the general public, co-workers, and supervisors. (Doc. 18, at 8-9).

However, this argument is not well-taken. In order for this Court to find harmless error,

11

the ALJ must have adopted all of a treating physician's opinion. *Wilson*, 378 F.3d at 548. Limiting someone to jobs that do not require strict productions quotas does not fully address the issue of poor concentration.  Therefore, the ALJ did not adopt Dr. Svala's opinion that Plaintiff had poor concentration and remand is necessary in order for the ALJ to give good reasons for only assigning some weight to Dr. Svala's opinion.

Similarly, with Dr. Greco's opinion, Defendant argues the ALJ placed similar or greater limitations in all but two areas. (Doc. 18, at 10). Specifically, (1) the ALJ found Plaintiff could lift and carry up to ten pounds when Dr. Greco had opined she only lift and carry up to five pounds; and (2) he found Plaintiff could sit for up to six hours a day when Dr. Greco had opined she could only sit for four to five hours a day. (Doc. 18, at 10). Apart from these two restrictions, the ALJ adopted all of Dr. Greco's findings. (Doc. 18, at 10). However, this piecemeal adoption is not sufficient to alleviate the ALJ's failure to provide good reasons. Harmless error is not available when an ALJ finds limitations less severe than those described by the treating physician. *Wilson*, 378 F.3d at 548.

Defendant further contends the ALJ found Plaintiff could lift up to ten pounds despite Dr. Greco's opinion because "Plaintiff herself testified that she could lift the greater amount of weight" and Dr. Greco based his finding on a single, positive straight leg test when there were negative findings elsewhere in the record. (Doc. 18, at 10). However, this reasoning is entirely absent from the ALJ's opinion. Thus, even when the record as a whole supports the ALJ's conclusion, "good reasons" must be clearly articulated. *Wilson*, 378 F.3d at 547.

In short, because harmless error is not appropriate, violation of the "good reasons" rule requires remand. *Wilson*, 378 F.3d at 543-46; *see also Rogers*, 486 F.3d at 243. Therefore, the Court remands this case for the ALJ to provide good reasons for rejecting the treating sources'

12

opinions.

*RFC Determination*

While there may be substantial evidence in the record to support the ALJ's RFC determination, until the ALJ provides clearly sufficient reasons for only affording "some weight" to the treating physicians' opinions, the Court abstains from determining whether the RFC is supported by substantial evidence.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds the ALJ failed to follow the treating physician rule. Accordingly, this matter is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

s/James R. Knepp, II
United States Magistrate Judge